IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| ESTHER AND JIM ROY EVIKANA, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>ARCTIC SLOPE NATIVE )<br>ASSOCIATION, LTD. d/b/a )<br>SAMUEL SIMMONDS )<br>MEMORIAL HOSPITAL; )<br>JAMES L. ASKEW, APRN; )<br>and JAMES W. SADOCK, M.D., )<br>)<br>Defendants. ) | COPY<br>Original Received<br>JUN 3 0 2025<br>Clerk of the Trial Courts<br><br><br><br><br>Case No. 3AN-25-07287 CI |

## COMPLAINT

COME plaintiffs, through counsel, the law firm of Dillon Findley & Simonian, P.C., and for plaintiffs' respective causes of action, allege as follows:

1. Esther and Jim Roy Evikana were and are residents of Barrow, Alaska during all times relevant to the facts alleged herein.

2. Defendant Arctic Slope Native Association, Ltd. d/b/a Samuel Simmonds Memorial Hospital ("Samuel Simmonds Memorial Hospital") is a healthcare facility located in Barrow, Alaska and doing business in the State of Alaska, which employs nursing and other staff in its Emergency Department and Hospital.

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

3. Defendant James L. Askew is a medical provider licensed as an Advanced Practice Registered Nurse by the State of Alaska. On information and belief, during all relevant times alleged herein, Mr. Askew was living in Barrow, Alaska working as an Advanced Practice Registered Nurse with privileges at Samuel Simmonds Memorial Hospital as a member of its medical staff.

4. Defendant James W. Sadock, M.D. is a medical doctor. On information and belief, during all relevant times alleged herein, Dr. Sadock was employed by, and/or an agent of, and/or on contract to Samuel Simmonds Memorial Hospital with privileges as a member of its medical staff.

5. Jurisdiction in this Court is proper under AS 22.10.020. Venue is proper under AS 22.10.030 and Alaska Rule of Civil Procedure 3(c)(1).[1]

6. Pursuant to AS 09.15.010, AS 09.55.570, and AS 09.55.580, Esther and Jim Roy Evikana, as parents of J█████ S█████, are entitled to pursue a wrongful death action for her death.

---

[1] This case involves care received at the Samuel Simmonds Memorial Hospital. It is likely that some if not all of the providers named were federal employees at the time of the care rendered to J█████ S█████ and their care is governed by the Federal Torts Claims Act ("FTCA"). A proper administrative Form 95 has been filed to toll the statute of limitations for the federal action. However, federal case law does not protect the state statute of limitations for any healthcare provider who is not an employee of the federal government under the FTCA. Since there is no way to ensure that the healthcare providers who provided care to J█████ S█████ were federal employees before the expiration of the state statute of limitations, this Complaint is necessary to require the United States Government to certify the status of each provider involved in her care.

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*

## FACTUAL BACKGROUND

7. Samuel Simmonds Memorial Hospital falsely advertised James Askew as a "pediatrician." According to the hospital's advertising, it explained "[a] pediatrician is a medical practitioner specialized in caring for children." In fact, a pediatrician is a medical doctor who specializes in the care of children from birth to adolescence.

8. Esther "Sanchez" Evikana had an uncomplicated prenatal course before she gave birth to J___ S___ on ___. J___ was a member of the Arctic Slope Regional Corporation. J___ was Esther and Jim Roy's third child out of six. Their family lived in Barrow.

9. J___ was diagnosed with asthma when she was approximately four (4) years old. The medical records available to Samuel Simmonds Memorial Hospital documented a "significant asthma history." The records also noted a "history of admissions as well as intubations for asthma in the past." A note in J___'s medical records memorialized chronic problems, such as severe persistent asthma (4/3/2019), eosinophilic asthma (3/11/2020), exacerbated allergic asthma coupled with acute respiratory distress (6/27/2022), dyspnea (10/12/2022), acute respiratory infection and acute exacerbation of asthma (11/19/2022). When J___ was five years old, in 2017, she experienced many of the same symptoms she had on July 5, 2023. Instead of letting her condition deteriorate, the staff at Samuel Simmonds Memorial Hospital timely arranged for a Medivac transport of J___ to Alaska Native Medical Center where she was treated for her asthma and released.

*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Page 3 of 18

Case 3:25-cv-00172-HRH   Document 10-1   Filed 08/20/25   Page 3 of 18   Exhibit A
3 of 18

10. Eosinophilic asthma is a subtype of asthma characterized by high levels of eosinophils (a type of white blood cell) in the airways, leading to inflammation and swelling. This can cause symptoms like wheezing, coughing, and shortness of breath, like other forms of asthma, but it often presents as more severe and persistent.

11. When J▇ began experiencing shortness of breath on July 5, 2023, the hospital records explain it had persisted over the previous 24 hours. Nebulizer treatments had not worked. Esther brought J▇, now 11 years old, to the Emergency Department of Samuel Simmonds Memorial Hospital at approximately 11:52 a.m.

12. At noon, Michael Hixenbaugh, RN took her vital signs. They were reported at 117/64 (BP), 02 saturation at 96 percent, pulse of 118, temperature of 98.29, respirations of 18, acuity of 3, and pain as a 6/10. The report described an "aching" pain in her chest persisting constantly over the prior two days. Nurse Hixenbaugh reported that J▇'s posture was "guarded."

13. At 12:17 p.m., Nurse Hixenbaugh noted that J▇ had labored breathing with bilateral wheezing in her lungs.

14. In a note from 12:45 p.m., Dr. Amy Anton reported that J▇ was admitted to the Emergency Department and immediately seen by her. She noted that Esther reported J▇ was having trouble breathing the day before and that her asthma worsens when exposed to smoke, which she had been during that day. Dr. Anton noted that J▇ "complain[ed] of pain in her chest and tightness. Pain worsens when she coughs. Cough is nonproductive. She also complains of headache, ear pain, sore throat."

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

Dr. Anton noted that J███ was in "moderate respiratory distress," but that she was awake and alert, cheerful, and speaking 1-2 work sentences."

15. On physical exam, Dr. Anton described, "accessory muscle use noted, tachypnea" in her chest and lungs with "diffuse expiratory wheezes" and her pulse and heart was described as "tachycardic and regular without murmurs." Dr. Anton included that J███ exhibited "normal affect and judgment." Dr. Anton's note reported "[c]oncern for asthma exacerbation, pneumonia, bronchitis, code 19, RSV, and flu." While "[h]er oxygen saturations were good but she was in obvious respiratory distress with tachypnea, accessory muscle use." She was given oral Decadron.

16. At 12:26 p.m., chest x-rays were taken at bedside, and Nurse Hixenbaugh began nebulizer treatments. The findings were of a normal appearing chest, with clear lungs, no pulmonary vascular congestion or pulmonary edema. Twenty-four minutes later J███'s condition was reassessed. Her breathing had improved, and the records reflect that she was feeling better although there was still "mild expiratory wheezes."

17. In a note at 1:00 p.m., Respiratory Therapist Carol Rivers updated J███'s vitals from those taken when she first arrived. She noted that J███'s saturation levels were at 94 percent. She was exhibiting moderate effort to breathe. Her lung sounds from both lungs demonstrated expiratory and inspiratory wheezes. Without oxygen, her saturation level was 88 percent, her heart rate was 132 and her respiratory rate was 24. Oxygen saturation rate improved to 94 percent, but her heart rate was 139 and her

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Case 3:25-cv-00172-HRH Document 10-1 Filed 08/20/25 Page 5 of 18 Exhibit A
Page 5 of 18
5 of 18

respiratory rate was 22. The administered nebulizer treatments did not alter those results by much.

18. Less than a half hour later the record notes that J▓▓▓'s oxygen saturation dipped dangerously below 80 percent. When she was reassessed, her wheezing had returned. She was given another dose of albuterol, an IV was placed, and she was given magnesium. The results of testing for COVID, RSV, and the flu were all negative. Because of her history, J▓▓▓ was admitted.

19. J▓▓▓ was seen by James Askew. In the records, he is identified not as a pediatrician, but instead as a CPNP, or a Certified Pediatric Nurse Practitioner.

20. During a meeting with J▓▓▓'s mother, Esther, she asked about his treatment plan and whether a Medivac should be called. He assured Esther that he had a plan for J▓▓▓'s care.

21. At 2:08 p.m., the medical record notes that J▓▓▓ still required 1L of Oxygen to keep her saturation levels above 90 percent. She was still wheezing and still had labored breathing. In a note signed by Dr. Anton at 2:09 p.m., J▓▓▓ was diagnosed with asthma exacerbation and at the time of admission, she was in "stable but guarded condition."

22. J▓▓▓ received steroids from IV. At 2:43 p.m. Nurse Hixenbaugh reported that J▓▓▓ was, "awake, yelling and crying," wanting "everyone to get away from her." The medical records reflect that Esther thought J▓▓▓ was reacting to the steroids. J▓▓▓ was admitted as an inpatient from the Emergency Department. J▓▓▓ was given .25 mg

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Case 3:25-cv-00172-HRH   Document 10-1   Filed 08/20/25   Page 6 of 18   Exhibit A
Page 6 of 18
6 of 18

of lorazepam; J▇ was described as resting well with improved anxiety. She was transferred from the Emergency Department to the inpatient unit, now requiring 4L of oxygen via nasal cannula.

23. Esther continued to ask about whether a Medivac was necessary.

24. Mr. Askew completed a History and Physical for J▇. The note is "dated" as being taken at 3:54 p.m. but was not signed by Mr. Askew until 12:52 a.m. the next day, July 6. He noted J▇'s history of asthma, and her symptoms that day of shortness of breath, cough, and wheezing. He recognized J▇ had been previously diagnosed and admitted several times with asthma exacerbation and that she had once required intubation at age 6. He noted that while in the Emergency Department, J▇ was "hypoxic to the low 90s to upper 80s, oxygen requirement to 2LPM N/C."[2]

25. Mr. Askew also documented that J▇'s air movement had improved and wheezing decreased. Noting "she continued to have an O2 requirement with mild-moderate WOB [work of breathing]."

26. Mr. Askew documented updated vitals for J▇a, originally taken at noon when she arrived in the Emergency Department. He noted that her temperature was 98.6, her pulse was at 155, her respirations were at 17, her blood pressure was at 113/66, and her oxygen saturation levels were at 92. He did not note that her vitals demonstrated that her condition was deteriorating and the treatments she was receiving were not working. Mr. Askew's impression was that J▇ was "sick, afebrile, and in mid to moderate

---

[2] 2 Liters per minute, nose cannula.

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Page 7 of 18

distress." She was tachycardic and tachypneic. Mr. Askew diagnosed J▮▮ with acute asthma exacerbation and hypoxemia. He noted a "[p]lan to continue Albuterol Q1, maintain FiO2 for Spo2 >90percent. Will space albuterol as she tolerates." The order required J▮▮'s vitals to be taken and recorded every four (4) hours. The "call parameters order" was for a temperature of higher than 101.5, respirations higher than 30 or less than 12, a pulse higher than 160 or less than 60, oxygen saturation less than 90 percent, a decline in mental status, or urine output less than 20 ML/hour.

27. Mr. Askew noted that J▮▮'s lab results revealed a lowered CO2 level. Lowered CO2 levels can signify respiratory alkalosis.

28. At 4:40 p.m., the records indicate that J▮▮ was seen by "attending," although who that was is not identified in the medical records. It is presumed this is Mr. Askew.

29. The attending record noted that she continued to be tachycardic.

30. At 4:45 p.m., J▮▮ received a breathing treatment. J▮▮ was described as emotional and that she said, "she could not breath." Her oxygen saturation again had fallen dangerously low to 88 percent and her heart rate was at 166. The clinical supervisor and respiratory therapist were at her bedside and the "attending messaged and informed."

31. Now nearly four hours after arriving, a note in the record written by Tiaha Allwood, RN states that J▮▮ was "noncompliant with oxygen therapy." The medical record states that though J▮▮ was asleep, "she continued to refuse oxygen therapy." Her oxygen saturation was between 88-92 percent. She continued to wheeze.

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Case 3:25-cv-00172-HRH   Document 1-0   Filed 08/20/25   Page 8 of 18   Exhibit A
Page 8 of 18
8 of 18

32. Six hours after J███'s arrival at the hospital, Nurse Allwood noted that she "became combative and aggressive, screaming and refusing IVF and oxygen. Attending contacted."

33. It is believed the "attending" was Mr. Askew.

34. Nurse Allwood reported "attending" was at bedside at 7:02 p.m. Nurse Allwood reported that J███ "continues to be noncompliant." Nurse Allwood noted that "J███ had not met goals."

35. Seven hours after arriving at the hospital, Chidozie O. Ibeh, RN noted that J███ was agitated, had labored breathing, and was "acting out of character with parent." Mr. Askew was present in the room. Nurse Ibeh documented J███'s oxygen saturation was "in the high 80s" and her pulse was "in the 160s." Nurse Ibeh referred to Mr. Askew as "Dr. Askew." Mr. Askew ordered .5 mg. of Ativan. She was also given a breathing treatment to "help with wheezes and difficulty breathing."

36. The records do not indicate that J███ was seen by a medical doctor after her admission until approximately 8:30 p.m. when Nurse Ibeh took Esther to the Emergency Department to consult with a medical doctor about J███'s condition. It was only then that a Medivac transport was initiated.

37. Nine hours after arriving, J███ was still agitated and the nurse noted her "increase work of breathing."

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Case 3:25-cv-00172-HRH  Document 1-1  Filed 08/20/25  Page 9 of 18  Exhibit A
Page 9 of 18                                                         9 of 18

38. The Medivac did not receive a call to travel from Anchorage to Barrow until 9:30 p.m., requesting an immediate and urgent response. The Medivac was dispatched immediately but did not document being enroute until 11:00 p.m.

39. At 10:00 p.m., it was documented that "Doctor Askew" gave J▇ a .35 mg dose of epinephrine.

40. At 10:30 p.m., J▇'s oxygen saturation levels were noted by respiratory therapist Caleb Brown to be at 87 percent without oxygen, her heart rate was at 165, her respiratory rate was at 48. Mr. Brown provided "intervention oxygen." Her oxygen saturation rate only increased to 94 percent and her heart rate remained high at 163. He noted that J▇ was "short of breath at rest," she exhibited "moderate [respiratory] effort," "nasal flaring," "accessory muscle usage," and had expiratory and inspiratory wheezes in both her right and left lungs.

41. Despite J▇'s deterioration since arriving at the hospital ten and half hours earlier to Mr. Askew's care, he did not document consulting a medical doctor about her declining condition.

42. While waiting for the Medivac, J▇ continued to deteriorate. Mr. Askew gave J▇ .5 ml IV push loading dose of ketamine at 10:15 p.m., with an IV drip of .524 mg 12 ml/hour. This was increased to 15/ml per hour at 11:37 p.m.

43. In an "inpatient provider note" dated July 6 at 12:53 a.m., Mr. Askew summarized his care of J▇. Mr. Askew wrote that J▇ had a "tantrum." He described her condition noting "became increasingly hostile and verbally abusive despite

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Case 3:25-cv-00172-RRH    Document 10-1    Filed 08/20/25    Page 10 of 18    Exhibit A
Page 10 of 18                                                                  10 of 18

IV Benadryl and Ativan." He also noted that her "respiratory effort continued to worsen, further exacerbated by her outbursts/tantrum."

44. Mr. Askew described notifying Alaska Native Medical Center, although it does not indicate in the medical records what time he did that.

45. Mr. Askew noted that J▓▓▓ was "now failing to mentate well." He included in his note that J▓▓▓'s arterial blood gases were consistent with respiratory failure.

46. Mr. Askew's note states "ER Attending Dr. Sadock has been following and is acutely aware." There are no records or notes from Dr. Sadock, other than an addendum written on July 6 at 2:40 a.m.

47. Mr. Askew ordered a second chest x-ray at 1:28 a.m., on July 6. Dr. Yariv Cohen reported his findings, that there was "interval development of soft tissue emphysema in the lower neck with pneumomediastinum. Prominent hila bilaterally. No airspace opacities in the lung parenchyma." The medical staff was notified at 1:45 a.m.

48. J▓▓▓'s condition deteriorated rapidly. By 2:00 a.m. on July 6, while waiting for the Medivac to arrive, J▓▓▓ was "transferred into the crash room" of the Emergency Department. At 2:10 a.m., J▓▓▓ was intubated by the "ER doctor in the crash room in the ER. Medications were given to relax [her]." She was sedated and intubated with a 6.5 endotracheal tube and was being manually ventilated.

49. At 2:30 a.m., the Medivac team arrived at Samuel Simmonds Memorial Hospital and took J▓▓▓. They found J▓▓▓ unconscious, unresponsive, her airway

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Case 3:25-cv-00172-HRH Document 10-1 Filed 08/20/25 Page 11 of 18 Exhibit A
Page 11 of 18
11 of 18

controlled by an endotracheal tube and being ventilated by clinical staff. Because of her acute condition, the decision was made to continue with transport to a higher level of care. The Medivac crew noted the impression of "brittle asthmatic in status asthmaticus."

50. J▮▮▮ was loaded onto the flight bed at 3:45 a.m. At approximately 4:30 a.m., her heart rate decreased to approximately 55 bpm. Her carotid pulse was assessed without a palpable pulse present. Resuscitative measures were attempted until approximately 5:30 a.m., when the decision was made to discontinue them. When the Medivac landed in Anchorage, J▮▮▮ was pronounced dead. Her cause of death was cardiac arrest, "pulseless electrical activity," severe asthma (brittle), and chronic respiratory issues that lasted for more than four hours.

## COUNT I
## CORPORATE NEGLIGENCE

Plaintiffs re-allege paragraphs 1 through 50 as if fully set forth herein and further allege as follows:

51. Defendant Samuel Simmonds Memorial Hospital had a duty to staff, train and supervise medical professionals it employed, contracted with or who are its agents.

52. Samuel Simmonds Memorial Hospital negligently and/or recklessly failed to formulate, adopt and enforce adequate rules and policies to ensure quality care for its patients admitted to its hospital including training and supervision of the medical providers who cared for J▮▮▮.

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Case 3:25-cv-00172-HRH   Document 1-1   Filed 08/11/25   Page 12 of 18
Page 12 of 18
Case 3:25-cv-00172-HRH   Document 16-1   Filed 09/26/25   Page 12 of 18   Exhibit A
12 of 18

53. As a direct and proximate cause of Samuel Simmonds Memorial Hospital's conduct and failures as above alleged, J▇ S▇ died from a treatable and avoidable cause.

## COUNT II
## WRONGFUL DEATH: JAMES L. ASKEW, CPNP

Plaintiffs re-allege paragraphs 1 through 53 as if fully set forth herein and further allege as follows:

54. CPNP James L. Askew owed a duty to J▇ to assess, diagnose, identify, and treat her within the appropriate standard of care.

55. Mr. Askew was negligent and/or reckless in failing to appropriately evaluate, assess, diagnose and treat J▇a.

56. As a direct and proximate cause of Mr. Askew's conduct as above alleged, Esther and Jim Roy's daughter, J▇, suffered injury, past pain and suffering, past medical expenses, loss of life, and future wage loss.

## COUNT III
## WRONGFUL DEATH: SAMUEL SIMMONDS MEMORIAL HOSPITAL

Plaintiffs re-allege paragraphs 1 through 56 as if fully set forth herein and further allege as follows:

57. On information and belief, health care providers caring for J▇ were employees, contractors or agents of defendant Samuel Simmonds Memorial Hospital during all times as alleged herein.

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Page 13 of 18

Case 3:25-cv-00172-HRH Document 1-1 Filed 08/14/25 Page 13 of 18
Case 3:25-cv-00122-HRH Document 10-1 Filed 08/20/25 Page 13 of 18 Exhibit A 13 of 18

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

58. In that Mr. Askew's care, and any and all health care providers, including other medical staff, employees, agents or contractors, were negligent and/or reckless in treating J███ S███z, defendant Samuel Simmonds Memorial Hospital is responsible for the pain and suffering, loss of consortium, and economic losses alleged herein under the doctrine of *respondeat superior* and/or apparent authority.

59. To the extent that health care providers at Samuel Simmonds Memorial Hospital were negligent and/or reckless, defendant Samuel Simmonds Memorial Hospital is vicariously and directly liable to the plaintiffs for the acts as alleged herein.

60. As a direct and proximate cause of Samuel Simmonds Memorial Hospital's conduct as above alleged, Esther and Jim Roy's daughter, J████, died, suffered physical injury, past pain and suffering, past medical expenses, loss of life, and future wage loss. Esther and Jim Roy suffered pain and suffering, past medical expenses, and the loss of their child.

## COUNT IV
## WRONGFUL DEATH: JAMES W. SADOCK, M.D.

Plaintiffs re-allege paragraphs 1 through 60 as if fully set forth herein and further allege as follows:

61. James W. Sadock, M.D. owed a duty to J████ to assess, diagnose, identify, and treat her within the appropriate standard of care. He also had a duty to oversee the actions and care provided by the nursing staff, including nurse practitioners with whom he was working.

LAW OFFICES
DILLON FINDLEY & SIMONTAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Case 3:25-cv-00172-HRH Document 1-1 Filed 08/11/25 Page 14 of 18
Case 3:25-cv-00172-HRH Document 10-1 Filed 08/20/25 Page 14 of 18 Exhibit A
Page 14 of 18
14 of 18

62. Dr. Sadock was negligent and/or reckless in failing to appropriately evaluate, assess, diagnose and treat J▇ and failing to provide adequate oversight of medical staff including nurses.

63. As a direct and proximate cause of Dr. Sadock's conduct as above alleged, Esther and Jim Roy's daughter, J▇a, suffered injury, past pain and suffering, past medical expenses, loss of life, and future wage loss.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs re-allege paragraphs 1 through 63 as if fully set forth herein and further allege as follows:

64. Defendants negligently inflicted severe emotional distress on Esther Evikana by failing to adequately treat and initiate a timely transport of her daughter to a higher level of care and holding out a nurse as a pediatric-trained medical doctor.

65. Esther begged the medical providers to initiate a transfer to Alaska Native Medical Center, and they ignored her. She watched her child J▇ in distress as the medical team accused J▇ of throwing tantrums and being abusive and failed to intervene in time to save J▇'s life. They minimized the seriousness of J▇'s condition, did not transport her and allowed her condition to deteriorate without informing her of the risks and without telling her that the person attending her child's care was a nurse. She was with her during her entire stay in the hospital, watched as J▇'s condition deteriorated until they took her away and intubated her, and was with her when she went into cardiac arrest and died in flight.

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Page 15 of 18

66. Esther's shock in observing her 11-year-old daughter's respiratory distress, deterioration, cardiac arrest, and ultimately her death caused Esther severe emotional distress.

## COUNT VI
## INFORMED CONSENT

Plaintiffs re-allege paragraphs 1 through 66 as if fully set forth herein and further allege as follows:

67. Defendants James Askew and Samuel Simmonds Memorial Hospital owed a duty to obtain Esther and Jim Roy Evikana's informed consent prior to treating their daughter on July 5 and 6, 2023 by furnishing them with material information that a reasonable patient would want to know in deciding whether to allow him to treat and whether to follow his recommendations for treatment for their daughter including, but not limited to, the common risks and alternatives to the procedure and the fact that Mr. Askew was not a medical doctor and required the oversight of a medical doctor.

68. Mr. Askew and Samuel Simmonds Memorial Hospital negligently and with reckless disregard failed to obtain Esther and Jim Roy's informed consent by failing to furnish them with material information that a reasonable patient would want to know before consenting to the type and extent of treatment he recommended including, but not limited to, his competency and training as a nurse rather than as a medical doctor as represented by Samuel Simmonds Memorial Hospital, an accurate diagnosis of J▆▆'s condition, and the fact that he was not, in fact, a medical doctor or a pediatrician, and no medical doctor was overseeing his treatment and recommendations for J▆▆.

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Page 16 of 18

69. Had Mr. Askew provided Esther and Jim Roy with this material information that a reasonable patient would want to know, they would not have consented to his treatment recommendations for J▇ after her admission on July 5.

70. As a direct result of the negligent and reckless conduct alleged herein, J▇ suffered avoidable injuries, pain and suffering, past medical expenses, future wage loss, loss of enjoyment of life and death.

71. As a direct and proximate cause of the negligent and/or reckless acts of Mr. Askew and Samuel Simmonds Memorial Hospital, Esther had to witness the physical pain and fear, emotional distress, and anxiety experienced by her daughter as a result of her respiratory distress, cardiac arrest, and ultimate death.

WHEREFORE, plaintiffs pray for relief as follows:

1. For compensatory damages, in excess of $100,000.00, the exact amount to be proven at trial, including, but not limited to, compensation for the wrongful death of J▇ S▇, for economic and non-economic losses, medical and funeral expenses, future wage loss, pre-death pain, suffering, loss of life, grief, loss of companionship, love and affection;

2. For punitive damages;

3. For costs, attorney's fees and pre-judgment interest; and

4. For such other and further relief as the Court deems just and proper.

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Case 3:25-cv-00172-HRH   Document 10-1   Filed 08/20/25   Page 17 of 18   Exhibit A
Page 17 of 18
17 of 18

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400  •  Fax: (907) 277-9896

DATED this 30th day of June 2025, at Anchorage, Alaska.

DILLON FINDLEY & SIMONIAN, P.C.
Attorneys for Plaintiffs

By: /s/ Margaret Simonian
Margaret Simonian, ABA No. 9901001

By: /s/ Julia D. Moudy
Julia D. Moudy, ABA No. 9411112

COMPLAINT
*Esther and Jim Roy Evikana v. Samuel Simmonds Memorial Hospital, et al.*
Case 3:25-cv-00172-HRH   Document 10-1   Filed 08/20/25   Page 18 of 18   Exhibit A
Page 18 of 18
18 of 18

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896